UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | In Proceedings Under |
| | ) | Chapter 11 |
| TREASURE ISLES, INC., | ) | |
| | ) | |
| Debtor. | ) | Bk. No. 19-30269 |

## DECLARATION OF JAMES MCCANN IN SUPPORT OF TREASURE ISLES, INC.'S FIRST DAY MOTIONS

I, JAMES MCCANN, hereby declare under penalty of perjury:

1. I am the President and Chief Executive Officer of Treasure Isles, Inc. (the "Debtor"), a corporation organized under the laws of the State of Illinois and the debtor and debtor in possession in the above-captioned case. In this capacity, I am familiar with the Debtor's day-to-day operations, business, financial affairs, and books and records.

2. On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Chapter 11 Case"). The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. I submit this declaration (the "First Day Declaration") to provide an overview of the Debtor and the Chapter 11 Case, and to support the Debtor's chapter 11 petition and "First-Day" motions filed concurrently herewith (each, a "First Day Motion"). Except as otherwise indicated, all facts set forth in this First Day Declaration are based on my personal knowledge of the Debtor's operations and financial affairs,

obtained from my review of relevant documents or from information provided to me by other members of the Debtor's management or advisors, or on my opinion based on my experience and knowledge about the Debtor's operations and financial condition. I am authorized to submit this First Day Declaration on behalf of the Debtor's and, if called as a witness, could and would testify competently to the facts stated herein.

## **PRELIMINARY STATEMENT**

4.       Debtor operates and manages 22 Long John Silver's restaurants located throughout Illinois.   As of the Petition Date, the Debtor had 22 operating Long John Silver's restaurants, 5 of which are a co-branded Long John Silver's and A&W restaurants, and over 300 employees, both full and part time.

5.       As mentioned in the foregoing paragraph, in connection with its business the Debtor employs approximately 327 full and part time employees (the "Employees"). The Employees provide food and customer service and related administrative tasks in connection with the business operations for each restaurant.  The Debtor's Employees include cooks, cashiers, bussers, dishwashers, managers, and administrative personnel. Each of those employees is critical to the Debtor's continued business and food operations.

6.       The Debtor previously filed a Chapter 11 bankruptcy case in Kentucky, and emerged from that case in 2012 following confirmation of a plan of reorganization.

7.       Following its prior Chapter 11 case, the Debtor was unable to maintain cash flows that would support its ongoing expenses, including lease obligations.   The cash flow issues persisted and the Debtor began looking for and has identified a potential

purchaser of its assets and business. The Debtor operates and manages 22 Long John Silver's restaurants located throughout Illinois. As of the Petition Date, the Debtor had 22 operating Long John Silver's restaurants, 5 of which are a co-branded Long John Silver's and A&W restaurants, and over 300 employees, both full and part time.

8. As mentioned in the foregoing paragraph, in connection with its business the Debtor employs approximately 327 full and part time employees (the "Employees"). The Employees provide food and customer service and related administrative tasks in connection with the business operations for each restaurant. The Debtor's Employees include cooks, cashiers, bussers, dishwashers, managers, and administrative personnel. Each of those employees is critical to the Debtor's continued business and food operations.

9. As set forth in greater detail below, and as reflected in the First Day Motions, the Debtor has filed this Chapter 11 Case to preserve and maximize the value of its assets for the benefit of its creditors and other stakeholders. The Debtor is in the process of negotiating a sale of its assets that will be subject to Court approval. Upon closing, the sale will allow the Debtor's business to emerge from bankruptcy as a viable going concern.

10. The Debtor filed this Chapter 11 case to facilitate a sale of its assets and business and intends shortly to file a motion to approve bidding procedures and begin the sale process, all of which will be subject to court approval.

**PART I - SUPPORT FOR RELIEF REQUESTED IN FIRST DAY MOTIONS**

11. The Debtor has filed with its chapter 11 petition a number of First Day Motions seeking relief that the Debtor believes is critical and necessary for it to operate with minimal disruption and to preserve the value of its assets and business during the Chapter 11 Case. I have reviewed each of the First Day Motions referenced below. The facts stated in each are true and correct to the best of my knowledge and belief, with appropriate reliance on the Debtor's employees and advisors. The relief sought in each First-Day Motion is necessary for the Debtor to continue its operations with as little disruption as possible and to permit the Debtor to proceed with its efforts to maximize the value of its assets and the recovery for its creditors and stakeholders.

12. The following is a summary of the relief requested in each First Day Motion and the reasons for such requests. The facts set forth in the First Day Motions are incorporated herein in their entirety.

**A.    Debtor's Motion for Interim and Final Orders (A) Authorizing the Use of Cash Collateral and (B) Providing Adequate Protection ("Cash Collateral Motion")**

13. Pursuant to sections 105(a), 361, 362, 363, and 507 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Illinois (the "Local Rules"), the Debtor requests entry of interim and final orders, (i) authorizing the Debtor to use cash collateral (the "Cash Collateral"); (ii) providing adequate protection; (iii) modifying the automatic stay; and (iv) scheduling a final hearing with respect to the Cash Collateral Motion.

14. Material terms of the Debtor's proposed use of Cash Collateral are set out in the Cash Collateral Motion in accordance with Bankruptcy Rule 4001(b) and the Local Rules.

15. As of the Petition Date, the Debtor had approximately $269,400.00 in cash on hand. I believe that First Southwest Financial and Yum! Capital (the "Putative Secured Creditors") are the only creditors that could assert an interest in the Debtor's Cash Collateral.

16. The Debtor must use Cash Collateral to continue to operate and pursue a sale process to maximize and maintain the value of its assets. The Debtor has an urgent need to use Cash Collateral and thereby avoid immediate and irreparable harm to the Debtor and its bankruptcy estate. It is therefore critical that the Debtor be granted authority to use Cash Collateral on an interim basis in the amount set forth in the budget (the "Budget"), a true and correct copy of which is annexed as Exhibit A to the Cash Collateral Motion, pending a final hearing on use of Cash Collateral, to continue its business operations and administer this Chapter 11 Case.

17. The Debtor has a critical and immediate need for the use of Cash Collateral. Without the use of Cash Collateral, in addition to debtor in possession financing, the Debtor would be unable to pay its current operating expenses to maintain its ordinary course, going-concern business, and would be required to cease operations. Accordingly, the Debtor has determined that it needs the ability to use Cash Collateral to meet general business obligations while it seeks to sell substantially all of its assets on a going-concern basis through its Chapter 11 Case.

18. The Budget projects cash flow, accruals and resulting funding requirements for 4 weeks. The Debtor has determined that the use of Cash Collateral according to the Budget is necessary and appropriate to fund this Chapter 11 Case, that the Budget is achievable, and that together with the proposed debtor in possession financing, it will allow the Debtor to meet its post-petition obligations as they arise.

19. Approval of the Cash Collateral Motion on an interim and final basis, will provide the Debtor with the ability to meet its current and ongoing operating expenses through the conclusion of the sale process, and thereafter to fund a responsible wind-down process. As indicated above, absent the immediate use of Cash Collateral, the Debtor would not be able to meet its current payroll and other current obligations, thereby immediately impeding the Debtor's ability to maximize the value of its assets. Authorization to use Cash Collateral as set forth in the Cash Collateral Motion and the Budget is essential to maximizing the realizable value of the Debtor's business on a going-concern basis, furthering the interests of all case stakeholders.

20. In light of the foregoing, I believe that the relief requested in the Cash Collateral Motion is in the best interests of the estate.

**B.    Debtor's Emergency Motion Of Debtor For Order Authorizing Payment Of Pre-Petition Employee Obligations, Continue Employee Benefit Plans, And Authorizing The Debtor's Banks To Pay All Checks Associated Therewith ("Wage Motion")**

21. The Debtor seeks to minimize (i) the personal hardship to its employees (collectively, the "Employees") as a result of the filing of this Chapter 11 Case and (ii) the disruption to its business for the benefit of its creditors and its estate, by requesting the authority (a) to pay and/or honor certain prepetition claims for, among

6

other items, wages, salaries, and certain incentive payments adopted prepetition in the ordinary course of business (collectively, the "Wages"), employee benefits, and other compensation or reimbursements (collectively, the "Benefits"), and to pay all costs incident to the foregoing (collectively, the "Wages and Benefits"), and (b) to continue to pay and/or honor such Wages and Benefits as they become due post-petition in the ordinary course of the Debtor's business. The Wages and Benefits for which this relief is sought are set forth in the Wage Motion.

22. Upon approval on an interim basis of the Cash Collateral Motion, the Debtor will have sufficient post-petition funds both to promptly pay all Wages and Benefits to the extent described in the Wages Motion and to continue its operations on an ongoing basis, subject to this Court's granting of the Sale Motion described above. In addition, the payments made to any Employees on account of unpaid prepetition wages or other benefits will not exceed the $12,850 statutory cap per Employee provided under section 507(a)(4) of the Bankruptcy Code. Consequently, there is no reason for the payment of the Wages and Benefits to the Employees as outlined in the Wage Motion to be delayed, which would directly harm the Employees and disrupt the Debtor's efforts in this Chapter 11 Case.

**C.    Debtor's Emergency Motion for an Order Authorizing (a) Maintenance of Existing Bank Accounts, and (b) Continued Use of Existing Business Forms, ("Bank Account Motion")**

23. The Debtor needs to maintain its current bank accounts with to continue to make ordinary course disbursements, including payment of payroll obligations, to collect customer receipts, corporate credit card, and other obligations.

24. More specifically, in the Bank Account Motion, the Debtor seeks authorization (1) to maintain its existing bank accounts and to pay any prepetition banking fees imposed by the financial institution where the Debtor's bank account is maintained, if any, (2) to continue to use its existing business forms and checks, (3) to continue to use its existing cash management system, and (4) waive, on an interim basis, the deposit and investment guidelines imposed under section 345(b) of the Bankruptcy Code.

25. The relief requested in the Bank Account Motion is essential to facilitate the orderly operation of the Debtor's business and reorganization process.

**D.    Debtor's Motion For Interim and Final Orders Under Bankruptcy Code Sections 105(a) and 366 (i) Prohibiting Utility Providers From Altering, Refusing or Discontinuing Service, (ii) Deeming Utilities Adequately Assured of Future Performance, and (iii) Establishing Procedures for Determining Adequate Assurance of Payment ("Utility Motion")**

26. In the normal course of business, the Debtor has relationships with various utility companies and other providers (each a "Utility Provider" and, collectively, the "Utility Providers") for the provision of telephone, gas, electricity and related services (the "Utility Services"). The Utility Providers include, without limitation, the entities set forth on Exhibit A attached to the Utility Motion.

27. Uninterrupted Utility Services are critical to the Debtor's ongoing operations.  The Debtor proposes to provide adequate assurance to the Utility Providers on the terms set forth in the Utility Motion.   In addition, as set forth in the Utilities Motion, the Debtor seeks to establish reasonable procedures by which a Utility Provider may request additional adequate assurance of future payment, in the event that such

Utility Provider believes that it has not been provided with satisfactory adequate assurance.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 13, 2019

_____
JAMES E. MCCANN, SR.